[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10926

Non-Argument Calendar

_____

TOP TOBACCO, L.P.,
REPUBLIC TECHNOLOGIES (NA), LLC,
REPUBLIC TOBACCO, L.P.,

                                                    Plaintiffs-Appellees,

*versus*

GABSONS NOVELTIES,
et al.,

                                                    Defendants,

DIAMOND J. WHOLESALE, LLC,
d.b.a. Gabsons Novelties,

2                    Opinion of the Court                    22-10926

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-02148-LMM

_____

Before JORDAN, NEWSOM, and ED CARNES, Circuit Judges.

PER CURIAM:

Diamond J Wholesale, LLC, and Raj Solomon, its sole owner and member, appeal a judgment of $11 million in statutory damages in favor of the plaintiffs (Top Tobacco, L.P., Republic Technologies (NA), LLC, and Republic Tobacco, L.P.) on their claims of willful trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114 *et seq*. Following review of the parties' briefs and the record, we affirm.[1]

*Evidentiary Rulings.* The appellants contend that the district court erred in excluding certain evidence (witness testimony and invoices) which purportedly would have shown that they and their suppliers had purchased the counterfeit products from a legitimate

_____

[1] As we write for the parties, we assume their familiarity with the case and set out only what is necessary to explain our decision. The panel unanimously determined that this appeal should be removed from the oral argument calendar and decided on the briefs. *See* 11th Cir. R. 34-3(b).

wholesaler named Star Importers.  According to the appellants, this evidence would have shown that they and their suppliers believed that Star Importers was a large and reputable seller of the plaintiffs' products.  And that, the appellants say, would have helped them defeat the plaintiffs' claim that the trademark infringement was willful.

Reviewing for abuse of discretion, *see Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1362–63 (11th Cir. 2002), we discern no errors.  First, the district court did not abuse its discretion in excluding the testimony of Steve Kent—one of the appellants' suppliers—because, among other things, Mr. Kent did not purchase products from Star Importers during the time period relevant to this suit. *See* D.E. 172 at 38–39.  Second, the district court did not abuse its discretion in excluding the invoices under Rule 37 because the appellants did not turn them over in discovery and only brought them to the district court's attention a year or so after the discovery deadline ended.  *See* D.E. 154 at 17–19.  In any event, even if the exclusion of the invoices constituted an abuse of discretion, any error was harmless because the invoices were not for transactions between Diamond J and Star Importers—they were between Quick Save Food Mart (a convenience store owned by Mr. Solomon) and Star Importers.  The invoices therefore do not bear on the appellants' purported good faith in obtaining the counterfeit products at issue, and any error in excluding them was harmless.  *See Luxottica*

*Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1319 (11th Cir. 2019); 28 U.S.C. § 2111.[2]

*Judicial Notice.* The appellants complain that the district court failed to take judicial notice of the definition of the word "culpability." *See* D.E. 172 at 36, 39–40. If there was any error under Federal Rule of Evidence 201, it was harmless because the district court permitted the appellants to include their definition of "culpability" in the jury instructions. *See id.* at 39–40. The appellants acknowledged that including the definition in the jury instructions would basically accomplish the same thing as judicial notice, *see id.* at 40, but they chose not to place the definition in the instructions. Given that course of action, any error in declining to take judicial notice of the definition was invited, is procedurally barred, or was harmless, or a combination of those three things.

*Mr. Solomon's Individual Liability.* Mr. Solomon challenges the district court's grant of summary judgment holding him individually liable for trademark infringement. He asserts that knowledge of infringement is required for individual liability under the Lanham Act, and that—as the district court originally thought—there are genuine issues of fact about his state of mind.

We conclude that the district court did not err. Under 15 U.S.C. § 1114(1)(a)—which in relevant part prohibits the use in

---

[2] With respect to the matter of financial data about Diamond J and its competitors, the appellants were able to testify and comment on Diamond J's small size and the restrictive effect that its size had on purchasing directly from Top Tobacco. Any error respecting that evidence was therefore also harmless.

commerce of counterfeit marks—a "showing of intent or bad faith is unnecessary to establish a violation[.]" *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991). And an individual is liable under that provision if he "actively and knowingly caused the infringement." *See id.* at 1477.

In *Chanel* we affirmed a district court's summary judgment order holding a corporate official individually liable because he (1) was the president and CEO of the infringing company, (2) purchased the infringing goods, (3) advertised those goods as legitimate, and (4) operated the showroom where the goods were sold. *See id.* at 1478. Here Mr. Solomon was the owner and sole member of Diamond J, and he stipulated that he was "chiefly responsible for buying and selling the counterfeit products and therefore 'actively caused the infringement as a moving, conscious force.'" D.E. 130–6 at ¶ 3. This was sufficient for the district court to grant summary judgment against him on the issue of individual liability. *See Chanel*, 931 F.2d at 1478 n.8 (explaining that an individual is liable if he "actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur") (emphasis omitted). *See also Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1164 (11th Cir. 2022) ("In other words, a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity is personally liable for that infringement.") (internal quotation marks and citation omitted).

Simply stated, we held in *Chanel*, 931 F.2d at 1476, that intent is not necessary to demonstrate a violation of § 1114(1)(a). Given this underlying principle, individual liability under that provision does not demand proof of scienter. Any issues of fact relating to Mr. Solomon's state of mind were therefore not material. *See* 87 C.J.S. Trademarks, Etc. § 296 (Aug. 2023 update) ("Actual intent to infringe is not necessary for liability under the Lanham Act, and, therefore, individual liability may be imposed on a corporate officer who had no knowledge of the infringement, but who had (1) the right and ability to supervise the infringing activity, and (2) a direct financial interest in [that] activity. In determining whether a corporate officer's acts render the officer individually liable under the Lanham Act, it is immaterial whether the officer knows that the acts will result in infringement.") (citations omitted).[3]

We affirm the district court's judgment.

**AFFIRMED.**

---

[3] Knowledge of infringement is required for the remedy of treble damages and attorney's fees under § 1117(b) of the Lanham Act, and such knowledge is usually a matter for the fact-finder. *See Chanel*, 931 F.2d at 1476–78. Here the jury found that Mr. Solomon acted willfully. *See* D.E. 191.